Willie Lester SEALS, Plaintiff,

v.

STATES MARINE LINES, INC.,
Defendant.

Civ. A. No. 9900.

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 18, 1960.

Ungar & Bubert, Leonard S. Ungar, August J. Bubert, New Orleans, La., for plaintiff.

Terriberry, Rault, Carroll, Martinez & Yancey, Walter Carroll, Jr., New Orleans, La., for defendant.

WRIGHT, District Judge.

Defendant's motion to dismiss presents the open question [1] as to the applicability of the doctrine of laches to ad-

1. Most of the lower courts have answered in the affirmative. See Claussen v. Mene Grande Oil Company, C.A., 3 Cir., 275 F.2d 108; Oroz v. American President Lines, 2 Cir., 259 F.2d 636; Evans v. American Export Lines, Inc., D.C. S.D.N.Y., 175 F.Supp. 386; Campanile v. Societa G. Malvicini, D.C.S.D.N.Y., 170 F.Supp. 667; Henderson v. Cargill, Inc., D.C.E.D.Pa., 128 F.Supp. 119; Apica v. Pennsylvania Warehousing & Safe Deposit Co., D.C.E.D.Pa., 74 F. Supp. 819, 101 F.Supp. 575; Unter-

singer v. Keystone Tankship Corp., D.C. E.D.Pa., 1948 A.M.C. 1899. Contra, Bonam v. Southern Menhaden Corporation, D.C.S.D.Fla., 284 F. 362. But the Supreme Court has reserved the question, McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 224, 78 S.Ct. 1201, 2 L.Ed. 2d 1272, note 5, together with the related question as to which limitation a state court must apply. See, Id., 357 U.S. 224, 78 S.Ct. 1203; Engel v. Davenport, 271 U.S. 33, 36, 46 S.Ct. 410, 70 L.Ed. 813.

miralty actions on the law side of the court.

On October 25, 1952, the plaintiff, Willie Seals, while working in New Orleans as a longshoreman aboard the S.S. Old Dominion State, was injured. The Old Dominion State at the time was owned by States Marine Lines, Inc., a New York corporation, but had been demised to States Marine Lines, Inc., a Delaware corporation. On December 11, 1953, Seals brought suit against States Marine of New York in the state court of New York, alleging unseaworthiness of the Old Dominion State. States Marine of New York answered to the merits, admitting ownership but denying operation of the vessel. The case finally came on for trial on November 24, 1959, at which time States Marine of New York successfully moved to dismiss on the ground that the Old Dominion State was at the time in question bareboat chartered to its subsidiary, States Marine of Delaware. On March 29, 1960, the instant proceedings were filed.

The defendant here, States Marine of Delaware, has moved to dismiss this action as time barred. Since diversity of citizenship and amount in controversy are the jurisdictional basis for the action, it asserts the Louisiana tort prescription of one year as the applicable time bar.[2] In the alternative it suggests the three-year limitation of the Jones Act, 46 U.S.C.A. § 688, 45 U.S.C.A. § 56.[3] It denies the application of the doctrine of laches.

It is true that when federal statutes which create federal rights of action do not include a period of limitation, it has been the practice to apply state statutes of limitation. See Campbell v. City of Haverhill, 155 U.S. 610, 616, 15 S.Ct. 217, 39 L.Ed. 280; Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602. It has never been suggested, however, that where a federal statute establishes a limitation period for the enforcement of federal rights, such statute should be disregarded in favor of a state statute of limitations applicable to similar rights. It would seem that similar principles should be applied to judicially created rights. Rights arising under the general maritime law are judicially created, as is the time bar on the exercise of those rights. Since maritime law must be applied to maritime causes of action, whether brought on the admiralty or law side of the court, Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239, the doctrine of laches, as part of the general maritime law, should likewise be so applied.

Applying the doctrine of laches here, the delay in bringing this action being excusable and no prejudice to defendant being shown, the action is not time barred. Where no prejudice or neglect is shown, limitation statutes, state or federal, while not irrelevant,[4] are not

---

2. Citing Romero v. International Term. Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed. 2d 368, and LSA–C.C. Art. 3536. But nothing in Romero affects the question here. For, though the Court went out of its way to give examples of state-created rights enforced in admiralty and state procedural rules applied by the federal courts in maritime cases, 358 U.S. 373–375, 79 S.Ct. 468, nevertheless, it significantly omitted any reference to state limitation statutes as supplanting the federal maritime law principle of laches.

3. See Daniels v. States Marine Corporation of Delaware, D.C.E.D.La., 184 F.Supp. 815.

4. When laches applies, it is customary to refer to a limitation statute in determining whether there has been "inexcusable delay" in bringing the action. Normally, if the period stipulated in the statute of reference has not expired, the plaintiff will not be held guilty of laches. Thus, it becomes important to determine what limitation provision is appropriate here. With some support in the cases (see LeGate v. The Panamolga, 2 Cir., 221 F. 2d 689, 691; Phillips v. The Hellenic, D.C.S.D.N.Y., 179 F.Supp. 5, 7), plaintiff argues that the proper statute of reference for a claim based wholly on unseaworthiness is the local contract limitation provision, which in this instance

to be applied mechanically. Gardner v. Panama R. Co., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31. Here suit was brought within four months after plaintiff's action against defendant's parent corporation bearing the same name had been brought to trial and dismissed on the ground that the vessel in suit had been bareboat chartered to its subsidiary. It should also be noted that the parent corporation in the former proceeding answered on the merits and did not move to dismiss the action until the trial thereof. It is true that States Marine of New York, in answering, denied operation of the Old Dominion State. But that allegation would not necessarily indicate the existence of a bareboat charter.[5] See Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692. And answering fully on the merits would indicate otherwise.

Motion denied.

---

would be ten years. LSA–C.C. Art. 3544. However, that contention overlooks the Supreme Court's express holding in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, that the obligation to furnish a seaworthy ship, though termed a "warranty," does not arise from any contract. See also Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549, 80 S.Ct. 926, 4 L.Ed.2d 941. On the other side, defendant initially urges the application of the local tort statute of limitation of one year. While there is stronger support for this view (see Oroz v. American President Lines, supra, 259 F.2d 639; Murphy v. International Freighting Corporation, D.C.D.Mass., 182 F.Supp. 636), it also runs afoul the doctrine of Sieracki and Mitchell, supra. Indeed, those decisions emphasize that the warranty of seaworthiness is not related to traditional tort notions of fault and negligence but is "essentially a species of liability without fault." 328 U.S. at page 94, 66 S.Ct. at page 877; 362 U.S. at page 549, 80 S.Ct. at page 932. The difficulties attendant applying either a local tort or contract limitation confirm this court's earlier conclusion in Daniels v. States Marine Corporation of Delaware, supra, that, for reasons there set forth at length, the proper statute of reference for a claim based on unseaworthiness is the Jones Act limitation provision of three years.

5. In late 1955 or early 1956, plaintiff's counsel was apparently advised of the existence of the charter in favor of the Delaware corporation. It is argued that then, if not sooner, plaintiff should have realized his error and filed the present suit against the bareboat charterer. But there are good reasons why this was not done. First, defendant, though disclosing the charter, did not at that time move to amend its answer and request a dismissal of the case on that ground; second, when the plaintiff sought to obtain the charter through discovery, he was denied it, which tended to support his view that the existence of the charter was irrelevant; and, finally, while the state court's eventual decision was probably correct, there is some basis in recent decisions for supposing that under some circumstances at least the owner may remain liable for the unseaworthiness of his ship despite a bareboat charter. See Cannella v. Lykes Bros. S.S. Co., 2 Cir., 174 F.2d 794; Grillea v. United States, on rehearing, 2 Cir., 232 F.2d 919; Dimas v. Lehigh Valley Railroad Company, 2 Cir., 234 F.2d 151. See also Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413. All these factors combined to encourage plaintiff in the belief that the named defendant was answerable. Nothing occurred to change his view until the eve of trial when defendant raised its special plea that the owner of a chartered vessel is not responsible for an unseaworthy condition. When that argument was sustained, plaintiff promptly filed the present suit.